PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x 101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (*pro hac vice* forthcoming)
Jason S. Cowart (*pro hac vice* forthcoming)
Shawn P. Naunton (*pro hac vice* forthcoming)
Anant Kumar (*pro hac vice* forthcoming)
Nell Z. Peyser (*pro hac vice* forthcoming)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com
snaunton@zuckerman.com
akumar@zuckerman.com
npeyser@zuckerman.com

(Additional Counsel on Signature Page)

*Attorneys for Plaintiffs and the Putative Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE SMITH, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE CO. and UNITED BEHAVIORAL HEALTH,<br><br>Defendants. | Case No. 3:18-cv-06336<br><br>**CLASS ACTION COMPLAINT** |

CLASS ACTION COMPLAINT

Plaintiff Jane Smith ("Plaintiff")[1] complains as follows on her own behalf and on behalf of all others similarly situated, based on the best of her knowledge, information and belief, formed after an inquiry reasonable under the circumstances by herself and her undersigned counsel, against Defendants:

## **INTRODUCTION**

1. Office-based psychotherapy is a mainstay of mental health treatment. Research published by the National Institutes of Health on managed behavioral healthcare network trends indicates that psychotherapy constitutes the lion's share (84%) of outpatient, office-based mental healthcare claims. *See* Reif, Horgan, Torres, & Merrick (2010). Psychotherapy and counseling services are most commonly delivered by psychologists and master's level clinicians who, according to a 2015 Congressional Research Service report, comprise the core of mental health providers.

2. Meanwhile, mental health conditions affect millions of Americans—the National Institute of Mental Health estimates 26% of American adults suffer from some type of mental health condition each year. The World Health Organization reports that mental health and substance abuse disorders are among the leading causes of disability in the United States. Outpatient psychotherapy plays a critical role in addressing these pervasive public health issues.

3. Defendants United HealthCare Insurance Co. ("UHIC") and United Behavioral Health ("UBH") (collectively, "United" or "Defendants") serve as the claims administrators for health insurance plans that cover more than one in five Americans. Most of these plans are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA requires that claims administrators such as Defendants discharge their duties in the interests of participants

---

[1] Plaintiff challenges Defendants' under-reimbursements for covered mental health services. Because mental illness remains subject to pervasive stigma, Plaintiff has legitimate concerns about publicly disclosing her psychiatric conditions. Thus, Plaintiff has chosen to file this action pseudonymously, using "Jane Smith" for herself. Her identity and that of her employer will be fully disclosed to Defendants and to the Court, so long as such identifying information is not released into the public record. Plaintiff's motion to proceed under a pseudonym will be filed nearly contemporaneously with this complaint, pending assignment of a judge and case number.

and beneficiaries, and in accordance with the written plan terms unless those terms are inconsistent with ERISA's provisions, including its anti-discrimination provisions.

4. Two such anti-discrimination provisions are the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act"), codified at 42 U.S.C. § 300gg-26, which has been incorporated into ERISA at 29 U.S.C. § 1185a, and Section 2706 of the Affordable Care Act ("Section 2706 of the ACA"), codified at 42 U.S.C. § 300gg-5, which has been incorporated into ERISA at 29 U.S.C. § 1185d.

5. Despite the critical importance of office-based psychotherapy to the health of plan participants and beneficiaries who suffer from mental illness or substance use, and Defendants' legal obligation to ensure compliance with ERISA's anti-discrimination provisions, Defendants have imposed and continue to impose reimbursement penalties on claims for coverage for psychotherapy services rendered by psychologists and master's level counselors (and thus on the lion's share of psychotherapy and office-based mental health treatment). These penalties are neither equally imposed on comparable office-based medical/surgical care nor grounded in actual provider quality/expertise. United's application of these penalties, therefore, violates its legal duties under ERISA to comply with the Parity Act and Section 2706 of the ACA. It also leads directly to United's wrongful denials of benefits.

6. Plaintiff was insured by a health insurance plan ("Plan") issued by Defendant UHIC, and administered by both Defendants. The Plan is governed by ERISA.

7. Plaintiff suffers from post-traumatic stress disorder, for which she receives outpatient psychotherapy from a licensed clinical social worker with over 28 years of post-masters degree experience who completed advanced, post-graduate training. Plaintiff's independently-licensed provider maintains a private practice, does not participate in United's provider network (i.e., she is out-of-network ("ONET"), or a non-participating ("Non-Par"), provider), and therefore has not entered into any contract with United to accept United's in-network rates.

8. Since 2016, Plaintiff has received treatment from her provider, and since she became insured by United in 2018, has submitted resulting claims for benefits to United. United

processed these claims, determined that they were covered under the Plan, and issued benefit payments under the Plan. As a result, there is no dispute in this case over whether the services at issue were medically necessary or covered by the Plan. The dispute in this case concerns the amount of benefits United determined to pay for the covered services.

9. Under the terms of Plaintiff's Plan, ONET benefits are to be determined based on an "Eligible Expense," which is the maximum amount of the provider's bill deemed eligible for reimbursement. The Plan specifies, however, that "[f]or Mental Health Services and Substance Use Disorder Services the Eligible Expense will be reduced by 25% for Covered Health Services provided by a psychologist and by 35% for Covered Health Services provided by a masters level counselor."

10. Critically, this provision and the policy it embodies (United's "Discriminatory Reimbursement Penalty") violates the Parity Act and Section 2706 of the ACA.

11. Yet, United applied the Discriminatory Reimbursement Penalty to Plaintiff's claims and reduced the Allowed Amount on her claims by 35%. Had Plaintiff sought counseling services from internists without specialized mental health training, for example, United would not have imposed this reduction.

12. By engaging in this type of discrimination against Plaintiff, based on nothing other than the fact that she sought mental healthcare from the type of clinician likely to be most available and qualified to provide it, United violated its legal duty (both as a fiduciary and otherwise) to comply with the Parity Act and Section 2706 of the ACA.

## THE PARTIES

**Plaintiff**

10. Plaintiff, who resides in Philadelphia, Pennsylvania, was insured as a participant under the Plan, which is a fully-insured, non-grandfathered large group commercial policy sponsored by her employer. The Plan, identified as a "UnitedHealthcare Choice Plus," is governed by ERISA and is both insured and administered by United.

**Defendants**

11. Defendant UHIC is a health insurance company that operates nationwide. Defendant UHIC administers both fully-insured health plans (such as the Plan), meaning that health care benefits are paid by UHIC from its own assets, and self-funded plans, meaning that health care benefits are paid by the plan from the assets of the plan sponsor employer. (collectively, "United Plans"). For all United Plans, Defendant UHIC controls and otherwise participates in the development of the policies and procedures applicable to the processing of benefit claims, and exercises discretion regarding the interpretation of the Plans' written terms, which claims to cover, and how much a given United Plan should pay for a covered claim. In that capacity, UHIC participated in and has knowledge of the development and application of the Discriminatory Reimbursement Penalty challenged herein.

12. In that same capacity, Defendant UHIC delegated responsibility to its corporate affiliate, Defendant UBH, to make benefit coverage determinations for mental health and substance use services under the United Plans. Defendant UBH is a corporation organized under California law, with its principal place of business in San Francisco, California. UBH receives a per-member-per-month ("PMPM") rate for providing this service for UHIC's fully-insured plans. UBH is responsible for paying benefits out of the PMPM amounts it receives from UHIC. UBH, thus, bears the risk for benefit expenses for fully-insured plans, such as Plaintiff's Plan. For all United Plans, Defendant UBH controls and otherwise participates in the development of the policies and procedures applicable to the processing of benefit claims for mental health and substance use services and exercises discretion regarding the interpretation of the Plans' written terms, which claims to cover, and how much a given United Plan should pay for a covered claim. In that capacity, Defendant UBH also participated in and has knowledge of the development and application of the Discriminatory Reimbursement Penalty challenged herein.

**JURISDICTION AND VENUE**

13. United's actions in administering employer-sponsored health care plans, including determining reimbursements for Plaintiff under her Plan, are governed by ERISA, 29 U.S.C. § 1001, *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e) (ERISA).

14. Venue is appropriate in this District. Defendants administer plans in this District, conduct significant operations in this District, and Defendant UBH is headquartered in this District.

## STATEMENT OF FACTS

15. Plaintiff was insured through her employer pursuant to a UnitedHealthcare Choice Plus plan effective June 1 for each plan year. Plaintiff's large-group, fully-insured policy is non-grandfathered under the Affordable Care Act.

16. The Certificate of Coverage ("COC"), which provides in- and out-of-network coverage for both medical and behavioral health services, was provided to Plaintiff as part of a booklet from Defendant UHIC.

17. In the section entitled "Eligible Expenses," the COC states in pertinent part:

When Covered Health Services are received from a non-Network provider, Eligible Expenses are determined, based on:

- Negotiated rates agreed to by the non-Network provider and either us or one of our vendors, affiliates or subcontractors, at our discretion.

- If rates have not been negotiated, then one of the following amounts:

    o Eligible Expenses are determined based on 110% of the published rates allowed by the *Centers for Medicare and Medicaid Services (CMS)* for Medicare for the same or similar service within the geographic market…;

    o When a rate is not published by *CMS* for the service, we use an available gap methodology to determine a rate for the service…;

    o ***For Mental Health Services and Substance Use Disorder Services the Eligible Expense will be reduced by 25% for Covered Health Services provided by a psychologist and by 35% for Covered Health Services provided by a masters level counselor.***

18. Beginning January 29, 2018 and continuing until June 28, 2018, Plaintiff submitted claims to United for coverage for behavioral health services she received. Each discrete service received was identified by and billed based on a five-digit code known as a "CPT" Code,

-5- CLASS ACTION COMPLAINT

1 which is shorthand for "Current Procedural Terminology." The CPT Codes are developed and
2 licensed for use by the American Medical Association.

3     19.     The two CPT Codes primarily used by the behavioral health provider for Plaintiff
4 were CPT Codes 90839, representing psychotherapy for crisis services and procedures for 60
5 minutes, and 90840, psychotherapy for crisis services and procedures for each additional 30
6 minutes.

7     20.     Plaintiff, or her provider on her behalf, submitted claims to United, which
8 processed them, and then UHIC sent to Plaintiff ERISA-mandated Explanation of Benefits
9 ("EOBs") reporting how United had processed the claims and what benefits were payable (if any)
10 by the Plan. For CPT Code 90839, Plaintiff's provider submitted claims with a billed amount of
11 $120. For CPT Code 90840, Plaintiff's provider submitted claims with a billed amount of $60.

12     21.     Each EOB reported, among other things, the Date of Service, Type of Service,
13 Notes, Amount Billed (defined as the "total amount that your provider billed for the services that
14 were provided to you"), amount Your Plan Paid (defined as "the portion of the amount billed that
15 was paid by your plan."), and Amount You Owe.

16     22.     Under the Notes column, each claim had a note listed as "ND," which United
17 defined as: "This out-of-network service was paid based on Medicare allowed amounts or other
18 sources if no Medicare amount is available. These amounts are used even if the patient doesn't
19 have Medicare."

20     23.     During the relevant time period, United set the amount "Your Plan Paid" for
21 Plaintiff's 60 minute therapy sessions (CPT Code 90839) with Plaintiff's master's level counselor
22 in the applicable zip code at $61.86, while Plaintiff's master's level counselor billed at $120 per
23 session. United set the amount "Your Plan Paid" for Plaintiff's 30 minute add-on sessions (CPT
24 Code 90840) with Plaintiff's master's level counselor in the applicable zip code at $29.55, while
25 Plaintiff's master's level counselor billed at $60 per session.

26     24.     Although the EOBs did not say so, these calculations reflected United's
27 application of the Discriminatory Reimbursement Penalty. For instance, the 2018 Centers for
28 Medicare and Medicaid Services (CMS) fee schedule for CPT Code 90839 in the metropolitan

1  Philadelphia area indicates rates of $144.20. Plaintiff's COC stated that, with respect to out-of-
2  network services, "Eligible Expenses are determined based on 110% of the published rates
3  allowed by [CMS] for Medicare for the same or similar services within the geographic market."
4  At 110% of the Medicare rate, Plaintiff's Plan should have covered the service in the amount of
5  $158.62. However, through applying the Discriminatory Reimbursement Penalty, United reduced
6  the covered amount by 35%, and thus, only covered $103.10.  Under Plaintiff's Plan, she was
7  responsible for 40% coinsurance, so the Plan paid $61.86, or 60% of $103.10.

8        25.  On March 30, 2018, Plaintiff filed a direct appeal with United to challenge its
9  inadequate reimbursements for her therapy sessions rendered by her master's level counselor. In
10  her appeal, Plaintiff stated, among other things, that "[p]er the Federal Mental Health Parity and
11  Addiction Equity Act passed in 2008, all insurers must cover mental health services on the same
12  terms they cover medical and surgical services" and that United was violating the law.

13        26.  Plaintiff inquired about the status of her appeal on April 11, April 17, and April
14  26, 2018. Each time she was told that it was being processed.

15        27.  On May 3, 2018, Defendant UBH denied her appeal. It acknowledged that it "is
16  responsible for making benefit coverage determinations for mental health and substance abuse
17  services that are provided to UBH members," but concluded that the submitted claims for dates
18  of service, 01/29/2018 through 04/04/2018, have not been approved for additional payment."

19        28.  In response to Defendant UBH's letter denying Plaintiff's appeal, Plaintiff
20  subsequently sent a second-level appeal letter. She wrote that "[w]hile my Certificate of Coverage
21  states that, with respect to out-of-network claims, 'Eligible Expenses are determined based on
22  110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS)
23  for Medicare for the same or similar service within the geographic market,' my psychotherapy
24  claims have not been reimbursed [at the rate of metropolitan Philadelphia]." This was because
25  "apparently, UBH has imposed a 35% penalty on mental health services rendered by
26  independently licensed, experienced masters' level clinicians. Because such penalty, as written in
27  my Certificate of Coverage, is only imposed on mental health benefits, it violates the [Parity Act]
28  as well as the Affordable Care Act's prohibition on provider discrimination."

29.     Defendant UBH denied Plaintiff's second-level appeal. In its denial, UBH entirely failed to address the issue which Plaintiff appealed. In particular, UBH ignored Plaintiff's concerns about the legality of United's Discriminatory Reimbursement Penalty and United's lack of compliance with the Parity Act. Rather, UBH simply repeated what it had written in its denial of Plaintiff's first-level appeal: that Plaintiff's claims had been adjudicated properly. UBH also wrote that this "is the Final Adverse Determination of your internal appeal. All internal appeals through UBH have been exhausted."

30.     UBH's final adverse determination went on to inform Plaintiff of the following: "You may have the right to file a civil action under ERISA if all required reviews of your claim have been completed."

## **VIOLATION OF THE FEDERAL PARITY ACT**

31.     The Parity Act, which is incorporated into ERISA at 29 U.S.C. § 1185a, prohibits discrimination with respect to mental health and substance use disorder benefits, by requiring that any group health plan, such as Plaintiff's Plan, which "provides both medical and surgical benefits and mental health or substance use disorder benefits . . . shall ensure that:

> (i) the financial requirements applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant financial requirements applied to substantially all medical and surgical benefits covered by the plan (or coverage), and there are no separate cost sharing requirements that are applicable only with respect to mental health or substance use disorder benefits; and
>
> (ii) the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits."

32.     In defining the Parity Act requirements, the relevant federal agencies have explained that it is impermissible to impose more restrictive quantitative limitations on mental health coverage than for medical or surgical services. It is also impermissible for those administering plans to "impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan

(or health insurance coverage) as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification." 29 C.F.R. § 2590.712(c)(4)(i).

33. On November 13, 2013, the Department of the Treasury, the Department of Labor and the Department of Health and Human Services jointly issued their "Final Rules" governing the Federal Parity Act. *See* 78 Fed. Reg. 68239-96 ("Final Parity Act Rule"). Among other things, the Final Rules describe "nonquantitative treatment limitations" ("NQTLs"), "which are limits on the scope or duration of treatment that are not expressed numerically," and provide an "illustrative list" of NQTLs which are subject to the Federal Parity Act requirements. This non-exhaustive list includes "methods for determining usual, customary and reasonable charges," which includes the methods United uses for determining allowed amounts or eligible expenses for Non-Par services.

34. The illustrative list of NQTLs in the Final Parity Act Rule to include methods for determining allowed amounts and eligible expenses mirrored an earlier articulation by the three federal agencies in their February 2, 2010 Interim Final Rules under the Federal Parity Act and was again highlighted in 2016 by the DOL in its "Warning Signs - Plan or Policy Non-Quantitative Treatment Limitations (NQTLs) that Require Additional Analysis to Determine Mental Health Parity Compliance" at https://www.dol.gov/sites/default/files/ebsa/laws-and-regulations/laws/mental-health-parity/warning-signs-plan-or-policy-nqtls-that-require-additional-analysis-to-determine-mhpaea-compliance.pdf.

35. The New York Attorney General ("NYAG") has also issued a statement summarizing actions by insurers that violate the federal mental health parity act. The list of "health plan conduct that may suggest violations of mental health parity and other laws" includes the following: "Reduced 'UCR' reimbursement for visits to a non-M.D. out-of-network provider,

if the plan has an out-of-network benefit." It is available at http://www.nyscouncil.org/wp-content/uploads/2014/01/Mental-Health-Parity-Flyer-for-providers.pdf.

36. The Discriminatory Reimbursement Penalty is not just an impermissible nonquantitative treatment limitation. It is also an illegal discriminatory financial requirement and a quantitative treatment limitation because it is a cap on units of service. If Defendants cover only three out of four patient visits, the outcome is the same as if United covered each visit at 75% of the Eligible Expense.

## VIOLATION OF THE ACA'S PROVIDER ANTI-DISCRIMINATION MANDATE

37. The Affordable Care Act ("ACA") sought, among other things, to empower insureds to make their own decisions about which medical providers to use for treatment, and explicitly precludes discrimination with respect to benefit payments based on the type of provider, stating in Section 2706 (42 U.S.C. § 300gg-5) as follows:

> A group health plan and a health insurance issuer offering group or individual health insurance coverage shall not discriminate with respect to participation under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable State law. This section shall not require that a group health plan or health insurance issuer contract with any health care provider willing to abide by the terms and conditions for participation established by the plan or issuer. Nothing in this section shall be construed as preventing a group health plan, a health insurance issuer, or the Secretary from establishing varying reimbursement rates based on quality or performance measures.

The provision has been incorporated into ERISA through 29 U.S.C. § 1185d.

38. United's application of the Discriminatory Reimbursement Penalty violates this law because it discriminates "with respect to coverage" against psychologists and master's level counselors by paying less than the Eligible Expenses otherwise used as the basis for determining benefits. Thus, United is discriminating in coverage against psychologists and master's level counselors, despite such providers acting within the scope of their licenses under applicable state law.

39. Moreover, while Section 2706 of the ACA allows "varying reimbursement rates based on quality or performance measures," United has failed to apply such measures here, let

alone on any individualized basis (and particularly with respect to Plaintiff's mental health provider). United's Discriminatory Reimbursement Penalty applies to *all* psychologists and master's level counselors, with no regard to "quality or performance measures" whatsoever. This is particularly egregious, given that such clinicians constitute the bulk of the core mental health work force providing the services at issue and frequently have the most relevant psychotherapy training and experience, yet are paid less than other providers who could well have far less psychotherapy training, experience, patient satisfaction, or treatment success.

**ADDITIONAL ALLEGATIONS RELATING TO UNITED'S
CONFLICT OF INTEREST AND BREACH OF FIDUCIARY DUTIES**

40. ERISA, 29 U.S.C 1104, requires fiduciaries to discharge their duties solely in the interests of plan beneficiaries and participants, and in accordance with the provisions of ERISA (such as the Parity Act and Section 2706 of the ACA). ERISA not only imposes liability where the fiduciary itself breaches these duties, but also where the fiduciary participates in another fiduciary's breach, or where the fiduciary knows about another fiduciary's breach but does not take reasonable steps to stop it. Indeed, ERISA even imposes remedies on a non-fiduciary who participates in a fiduciary's breach. Defendants breached all of these duties.

41. Moreover, United's application of the illegal Discriminatory Reimbursement Policy was not an innocent mistake. Instead, it was driven by United's own financial interests, which United elevated above the interests of plan participants and beneficiaries, including Plaintiff. United sacrificed the interests of insureds so that it could artificially decrease the amount of benefits it was required to pay from its own assets (i.e., with respect to fully-insured plans) and the assets of its employer-sponsor customers (i.e., with respect to self-funded plans). Moreover, by prioritizing the assets of its employer-sponsored customers over the interests of participants and beneficiaries, United also advanced its own interests in retaining and expanding its business with such customers.

**CLASS CLAIMS**

42. Defendants applied, and continue to apply, the Discriminatory Reimbursement Penalty across the board. They do so regardless of whether the written plan terms base benefit payments for out-of-network services on Medicare rates or another measure such as FAIR Health.

43. United also applies the Discriminatory Reimbursement Penalty to all United Plans, regardless of whether the applicable COCs expressly incorporate language purporting to authorize it.

44. For instance, United has applied the Discriminatory Reimbursement Penalty to members of other commercial group plans where the COCs have stated in pertinent part:

> **Allowed Amount.** "Allowed Amount" means the maximum amount we will pay to a Provider for the services or supplies covered under this Certificate, before any applicable Deductible, Copayment, and Coinsurance amounts are subtracted. We determine our Allowed Amounts as follows:
>
> The Allowed Amount for Participating Providers will be the amount we have negotiated with the Participating Provider.
>
> * * * *
>
> The Allowed Amount for Non-Participating Providers will be determined as follows:
>
> The Allowed Amount will be 80% of the FAIR Health rate.

45. As a result, Plaintiff brings Counts I, II, III and IV on her own behalf, and on behalf of the following Class:

> all participants or beneficiaries in ERISA plans whose claim(s) for behavioral health services provided by out-of-network psychologists or master's level counselors were subjected to United's Discriminatory Reimbursement Penalty, excluding plans issued by Oxford Health Insurance, Inc.

46. Common class claims and issues exist for the Class, including, but not limited to, the following:

1. Whether Defendants are ERISA fiduciaries;

2. Whether the Discriminatory Reimbursement Penalty violates the Federal Parity Act;

3. Whether Defendants' legal duties (fiduciary or otherwise) required them to refrain from applying the Discriminatory Reimbursement Penalty because it violates the Federal Parity Act;

4. Whether the Discriminatory Reimbursement Penalty violates Section 2706 of the ACA;

5. Whether Defendants' legal duties (fiduciary or otherwise) required them to refrain from applying the Discriminatory Reimbursement Penalty because it violates Section 2706 of the ACA.

47. The members of the Class are so numerous that joinder of all members is impracticable. United is one of the largest insurers and administrators in the country. The Class consists of thousands of subscribers.

48. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class, including the class action claims and issues listed above.

49. Plaintiff's claims are typical of the claims of the Class members because, as alleged herein, the Discriminatory Reimbursement Penalty applied to Plaintiff was also applied to members of the Class.

50. Plaintiff will fairly and adequately protect the interests of the members of the Class, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class action and ERISA health insurance-related litigation, and has no interests antagonistic to or in conflict with those of the Class.

51. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because joinder of all members of the Class is impracticable. Further, the expense and burden of individual litigation make it irrational for Class members individually to redress the harm done to them. Moreover, because this case involves Class members who suffer from mental health conditions, and those who suffer from such conditions continue to experience social stigma, it is unlikely that many Class members would be willing to have their conditions become public knowledge by filing individual lawsuits. Given the uniform policy and practices at issue, there will also be no difficulty in the management of this litigation as a class action.

## COUNT I
### (claim for relief under ERISA, 29 U.S.C. § 1132(a)(1)(B), and the Federal Parity Act)

52. Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

53. This count is a claim to recover benefits due to Plaintiff under the terms of her Plan, to enforce her rights under the terms of the Plan, and/or to clarify her rights to future benefits under the terms of the Plan, brought pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B).

54. As ERISA fiduciaries, each Defendant was required discharge its duties in compliance with the Federal Parity Act, refrain from participating in the other Defendant's breach of the Federal Parity Act, and take reasonable efforts to remedy the other Defendant's breach. Indeed, even if one of the Defendants was not a fiduciary, such Defendant is liable for participating in the breach of the other's fiduciary duty.

55. Yet, both Defendants knew about, did nothing to stop, and knowingly participated in the application of the Discriminatory Reimbursement Penalty that violates the Federal Parity Act.

56. By doing so, Defendants not only violated their legal duties, they also wrongfully denied benefits to Plaintiff.

## COUNT II
### (claim for relief under ERISA, 29 U.S.C. § 1132(a)(1)(B), and the Affordable Care Act)

57. Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

58. This count is a claim to recover benefits due to Plaintiff under the terms of her Plan, to enforce her rights under the terms of the Plan, and/or to clarify her rights to future benefits under the terms of the Plan, brought pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B).

59. As ERISA fiduciaries, each Defendant was required discharge its duties in compliance with Section 2706 of the ACA, refrain from participating in the other Defendant's breach of Section 2706 of the ACA, and take reasonable efforts to remedy the other Defendant's

1  breach. Indeed, even if one of the Defendants was not a fiduciary, such Defendant is liable for
2  participating in the breach of the other's fiduciary duty.

3      60.    Yet, both Defendants knew about, did nothing to stop, and knowingly participated
4  in the application of the Discriminatory Reimbursement Penalty that violates Section 2706 of the
5  ACA.

6      61.    By doing so, Defendants not only violated their legal duties, they also wrongfully
7  denied benefits to Plaintiff.

## COUNT III
### (claim for relief under ERISA, 29 U.S.C. § 1132(a)(3)(A))

    62.    Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

    63.    This count is brought pursuant to ERISA, 29 U.S.C. § 1132(a)(3)(A), to enjoin United's acts and practices which violate the Federal Parity Act and Section 2706 of the ACA, as incorporated into the Plan and ERISA, as detailed herein. Plaintiff brings this claim only to the extent that the Court finds that the injunctive relief sought is unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).

## COUNT IV
### (claim for relief under ERISA, 29 U.S.C. § 1132(a)(3)(B))

    64.    Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

    65.    This count is brought pursuant to 29 U.S.C. § 1132(a)(3)(B), to obtain appropriate equitable relief (i) to redress United's violations of the Federal Parity Act and Section 2706 of the ACA, as incorporated into the Plan and ERISA, and/or (ii) to enforce such provisions of ERISA or the Plan. Plaintiff brings this claim only to the extent that the Court finds that the equitable relief sought is unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment in her favor against Defendants as follows:

1   A. Certifying the Class and appointing Plaintiff as Class Representative;

2   B. Declaring that Defendants violated their legal obligations in the manner described
3   herein;

4   C. Permanently enjoining Defendants from engaging in the misconduct described
5   herein;

6   D. Ordering Defendants to pay or reprocess all wrongfully denied claims without the
7   illegal limitations described herein, with interest;

8   E. Ordering appropriate equitable relief, including but not limited to an appropriate
9   monetary award based on disgorgement, restitution, surcharge or other basis;

10  F. Awarding Plaintiff disbursements and expenses of this action, including
11  reasonable attorneys' fees, in amounts to be determined by the Court; and

12  G. Granting such other and further relief as is just and proper in light of the evidence.

| | |
|---|---|
| Dated: October 16, 2018 | /s/ Meiram Bendat |
| | Meiram Bendat (Cal. Bar No. 198884) |
| | PSYCH-APPEAL, INC. |
| | 8560 West Sunset Boulevard, Suite 500 |
| | West Hollywood, CA 90069 |
| | 310.598.3690 Ext: 101 |
| | 888.975.1957 (fax) |
| | mbendat@psych-appeal.com |
| | |
| | D. Brian Hufford (*pro hac vice* forthcoming) |
| | Jason S. Cowart (*pro hac vice* forthcoming) |
| | Shawn P. Naunton (*pro hac vice* forthcoming) |
| | Anant Kumar (*pro hac vice* forthcoming) |
| | Nell Z. Peyser (*pro hac vice* forthcoming) |
| | ZUCKERMAN SPAEDER LLP |
| | 485 Madison Avenue, 10th Floor |
| | New York, NY 10022 |
| | 212.704.9600 |
| | 212.704.4256 (fax) |
| | dbhufford@zuckerman.com |
| | jcowart@zuckerman.com |
| | snaunton@zuckerman.com |
| | akumar@zuckerman.com |
| | npeyser@zuckerman.com |
| | |
| | John W. Leardi (*pro hac vice* forthcoming) |
| | Vincent N. Buttaci (*pro hac vice* forthcoming) |
| | Paul D. Werner (*pro hac vice* forthcoming) |
| | BUTTACI LEARDI & WERNER LLC |
| | 103 Carnegie Center, Suite 323 |
| | Princeton, NJ 08540 |
| | 609-799-5150 |
| | 609-799-5180 (fax) |
| | jwleardi@buttacilaw.com |
| | vnbuttaci@buttacilaw.com |
| | pdwerner@buttacilaw.com |
| | |
| | *Counsel for Plaintiff and the Putative Class* |