UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JANE SMITH,

    Plaintiff,

v.

UNITED HEALTHCARE INSURANCE COMPANY, et al.,

    Defendants.

Case No. 18-cv-06336-HSG

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; GRANTING MOTION TO PROCEED UNDER PSEUDONYM**

Re: Dkt. Nos. 23, 36

Currently before the Court are Defendants' motion to dismiss and Plaintiff's unopposed motion to proceed under a pseudonym. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss and **GRANTS** the motion to proceed under a pseudonym.

### I. BACKGROUND

#### A. Factual Allegations

Plaintiff Jane Smith enrolled in the UnitedHealthcare Choice Plus health insurance plan (the "Plan") in 2018. *See* Complaint, Dkt. No. 1 ("Compl.") ¶¶ 6, 10. The Plan was issued by United HealthCare Insurance Co. ("UHIC") and administered by UHIC and United Behavioral Health (collectively, "United" or "Defendants"). *Id.* ¶¶ 6, 11–12. The Plan was governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id.* ¶ 6.

Plaintiff suffered from post-traumatic stress disorder, for which she had received outpatient psychotherapy from a licensed clinical social worker since 2016. *Id.* ¶¶ 7–8. Her clinical social worker had "completed advanced, post-graduate training" and had nearly three decades of experience. *Id.* ¶¶ 7–8. The clinical social worker had a private practice and was out-of-network with United; in other words, this provider had "not entered into any contract with United to accept

United's in-network rates." *Id.* Instead, Plaintiff submitted her claims for benefits to United and United paid her provider according to its reimbursement schedule. *Id.* Plaintiff is only disputing the "amount of benefits United determined to pay for the covered services" and no one disputes whether the services were medically necessary or covered by the Plan. *See id.*

The Plan's Certificate of Coverage explained how expenses would be paid or reimbursed. *Id.* ¶¶ 16–17. When an insured obtained services from an out-of-network provider who had not negotiated rates with United, "Eligible Expenses are determined based on 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for Medicare for the same or similar service within the geographic market." *Id.* ¶ 17 (emphasis omitted). However, "[f]or Mental Health Services and Substance Use Disorder Services the Eligible Expense will be reduced by 25% for Covered Health Services provided by a psychologist and by 35% for Covered Health Services provided by a masters level counselor." *Id.* (emphasis omitted).

According to Plaintiff, because this reimbursement formula decreased the amount paid for mental health and substance use disorder services provided by psychologists or counselors, it constituted a "Discriminatory Reimbursement Penalty," in violation of ERISA and the Affordable Care Act ("ACA"). *Id.* ¶¶ 10, 24. For example, Plaintiff's provider submitted a claim to United for $120 for one hour of "psychotherapy for crisis services and procedures," which is designated as CPT Code 90839. *Id.* ¶¶ 19–20, 23. But United paid the provider only $61.86. *Id.* ¶ 23. Plaintiff explained the discrepancy as follows:

> For instance, the 2018 Centers for Medicare and Medicaid Services (CMS) fee schedule for CPT Code 90839 in the metropolitan Philadelphia area indicates rates of $144.20. Plaintiff's COC stated that, with respect to out-of-network services, "Eligible Expenses are determined based on 110% of the published rates allowed by [CMS] for Medicare for the same or similar services within the geographic market." At 110% of the Medicare rate, Plaintiff's Plan should have covered the service in the amount of $158.62. However, through applying the Discriminatory Reimbursement Penalty, United reduced the covered amount by 35%, and thus, only covered $103.10. Under Plaintiff's Plan, she was responsible for 40% coinsurance, so the Plan paid $61.86, or 60% of $103.10.

*Id.* ¶ 24. Thus, much of the difference between the amount billed and the amount reimbursed was due to United's so-called Discriminatory Reimbursement Penalty. *See id.* ¶¶ 23–24.

Plaintiff appealed the reimbursement rates, raising the Parity Act, but United denied the

2

appeal. *Id.* ¶¶ 25–27. Plaintiff filed a second-level appeal, but United denied that one too. *Id.* ¶¶ 28–29. United informed Plaintiff that she had exhausted her internal appeals but had a right to file a civil action under ERISA. *Id.* ¶¶ 29–30.

### B. This Lawsuit

Plaintiff filed this lawsuit on October 16, 2018, claiming that United's policy violated the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act") and the anti-discrimination mandate within the Affordable Care Act. Compl. ¶¶ 4, 10, 31–39. She also alleged that the reimbursement penalty in the Plan amounted to a conflict of interest and breach of United's fiduciary duties. *Id.* ¶¶ 40–41.

Plaintiff asserted four causes of action in her complaint: (1) a claim for benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), for violating the Parity Act, *id.* ¶¶ 52–56; (2) a claim for benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), for violating the ACA, *id.* ¶¶ 57–61; (3) a claim for injunctive relief under ERISA, 29 U.S.C. § 1132(a)(3)(A), against Plan practices that violate the Parity Act and the ACA, *id.* ¶¶ 62–63; and (4) a claim for appropriate equitable relief under ERISA, 29 U.S.C. § 1132(a)(3)(B), *id.* ¶¶ 64–65.

Plaintiff brought her suit on behalf of herself and a putative class composed of "all participants or beneficiaries in ERISA plans whose claim(s) for behavioral health services provided by out-of-network psychologists or master's level counselors were subjected to United's Discriminatory Reimbursement Penalty, excluding plans issued by Oxford Health Insurance, Inc." *Id.* ¶ 45.

### C. Procedural History

Plaintiff filed a consent motion to proceed under a pseudonym and to seal personally identifying information on November 9, 2018. *See* Dkt. No. 23.

Defendants moved to dismiss the complaint on December 10, 2018. *See* Dkt. No. 36 ("Mot."). Plaintiff opposed, Dkt. No. 41 ("Opp."), and Defendants replied, Dkt. No. 42 ("Reply"). The Court held a hearing on the motions on March 21, 2019. *See* Dkt. No. 48.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

3

statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citation omitted).

### III. DISCUSSION

Defendants moves to dismiss all four causes of action asserted in the Complaint. *See* Mot. at 2. The Court will discuss each in turn.

#### A. Parity Act Claim

Defendants offer three arguments for why Plaintiff has failed to plead facts plausibly demonstrating the "essential elements of a parity claim." Mot. at 5. The Court begins by summarizing the requirements of the Parity Act before considering each of United's grounds for

4

dismissal.

### i. The Parity Act

"Congress enacted the [Parity Act] to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016); *see also Coal. for Parity, Inc. v. Sebelius*, 709 F. Supp. 2d 10, 13 (D.D.C. 2010) (noting that the Parity Act was "designed to end discrimination in the provision of coverage for mental health and substance use disorders as compared to medical and surgical conditions in employer-sponsored group health plans and health insurance coverage offered in connection with group health plans"). The Parity Act mandates that "if an insurer 'provides both medical and surgical benefits and mental health or substance use disorder benefits,' the insurer must ensure that both 'the financial requirements' and 'the treatment limitations' applicable to mental health and substance use disorder benefits 'are no more restrictive' than the predominant financial requirements and treatment limitations that apply to medical and surgical benefits." *Am. Psychiatric Ass'n*, 821 F.3d at 356 (quoting 29 U.S.C. § 1185a(a)(3)(A)). Further, insurers may not impose "separate cost sharing requirements that are applicable only with respect to mental health or substance use disorder benefits," 29 U.S.C. § 1185a(a)(3)(A)(i), nor "separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits," *id.* § 1185a(a)(3)(A)(ii).

The Parity Act defines the term "financial requirement" to include "deductibles, copayments, coinsurance, and out-of-pocket expenses." *Id.* § 1185a(a)(3)(B)(i). And it defines the term "treatment limitation" to include "limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment." *Id.* § 1185a(a)(3)(B)(iii). The federal regulations implementing the Parity Act further explain the two types of treatment limitations that may run afoul of the statute's prohibition. *See* 29 C.F.R. § 2590.712. First are quantitative treatment limitations ("QTLs"), "which are expressed numerically." *See* § 2590.712(a). For example, "50 outpatient visits per year" is a QTL. *Id.* Second are nonquantitative treatment limitations ("NQTLs"), "which otherwise limit the scope or

5

duration of benefits for treatment under a plan or coverage." *Id.* The regulation provides an

"[i]llustrative list of nonquantitative treatment limitations":

> (A) Medical management standards limiting or excluding benefits based on medical necessity or medical appropriateness, or based on whether the treatment is experimental or investigative;
> (B) Formulary design for prescription drugs;
> (C) For plans with multiple network tiers (such as preferred providers and participating providers), network tier design;
> (D) Standards for provider admission to participate in a network, including reimbursement rates;
> (E) Plan methods for determining usual, customary, and reasonable charges;
> (F) Refusal to pay for higher-cost therapies until it can be shown that a lower-cost therapy is not effective (also known as fail-first policies or step therapy protocols);
> (G) Exclusions based on failure to complete a course of treatment; and
> (H) Restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage.

§ 2590.712(c)(4)(ii).

In sum, a plaintiff bringing a Parity Act claim must show that an insurer imposes a discriminatory financial requirement, QTL, or NQTL on mental health or substance use disorder benefits. *See, e.g.*, *Roy C. v. Aetna Life Ins. Co.*, No. 2:17CV1216, 2018 WL 4511972, at *3 (D. Utah Sept. 20, 2018) (explaining that "the Act requires that a plan's treatment and financial limitations on mental health or substance abuse disorder benefits cannot be more restrictive than the limitations for medical and surgical benefits"). Plaintiff alleges Parity Act violations based on all three theories: discriminatory QTL, Compl. ¶ 36, discriminatory financial requirement, *id.* ¶ 36, and discriminatory NQTL, *id.* ¶ 32–34.

### ii. QTL and Financial Requirement Theories

First, Defendants contend that "the challenged reimbursement terms are plainly an NQTL" and that Plaintiff cannot "simultaneously or alternatively plead that [they] are also a financial requirement and QTL." Mot. at 6. Plaintiff responds that she pled "three independent and alternative legal theories as to why the statute was violated," and that "nothing prevents [her] from pursuing multiple legal theories under the same statute at the same time." Opp. at 5–6.

The Court agrees with Plaintiff that she may pursue alternative, and even possibly contradictory, theories of relief at this stage of the proceedings. After all, "federal complaints

6

plead claims, not causes of action or statutes or legal theories." *Alvarez v. Hill*, 518 F.3d 1152, 1154 (9th Cir. 2008). The Federal Rules of Civil Procedure allow a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). And the Rules specifically permit a party to "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3); *see also Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014) (holding that ERISA plaintiff could plead alternative theories of liability).

Defendants posit that Plaintiff "concedes" that she is pursuing an NQTL theory, Mot. at 6, but that assertion is flatly contradicted by the actual words in her complaint: "The Discriminatory Reimbursement Penalty is not just an impermissible nonquantitative treatment limitation. It is also an illegal discriminatory financial requirement and a quantitative treatment limitation because it is a cap on units of service." *See* Compl. ¶ 36. Contrary to Defendants' characterization, the plaintiff in *Doe v. United Health Group Inc.* did not plead "identical language" and thus that case is not particularly instructive on this point. *See* Mot. at 6 (citing No. 17-CV-4160(AMD)(RL), 2018 WL 6002902, at *1 (E.D.N.Y. Nov. 15, 2018) (denying motion for reconsideration because "nowhere in the complaint" did plaintiff allege that the reimbursement policy was a QTL or financial requirement)). Accordingly, the Court will not prohibit Plaintiff from pursuing multiple theories under the Parity Act at this stage.

Nor does the Court find that Plaintiff's claims fit so neatly into the NQTL category as to require dismissal of the QTL or financial requirement theories. Defendants contend that the reimbursement policy is "plainly" an NQTL because "NQTLs are limitations that cannot be expressed numerically." Mot. at 6. They point to the regulation's illustrative list of NQTLs, which includes "[s]tandards for provider admission to participate in a network, including reimbursement rates." *Id.* (citing 29 C.F.R. § 2590.712(c)(4)(ii)(D)). Of course, this example from the regulation is somewhat inapposite, because Plaintiff's mental health providers were *not* in her network. *See* Compl. ¶¶ 7–8. Moreover, Plaintiff has at least plausibly alleged that United's reimbursement policies were a QTL and a financial requirement. The reduced reimbursement is "expressed numerically" (either 25% or 35% less than the otherwise allowed

7

rate) and thus plausibly qualifies as a QTL. *See* § 2590.712(a). Likewise, United's policy plausibly constitutes a financial requirement because the effect of reduced reimbursements was increased "out-of-pocket expenses" for Plaintiff. *See* 29 U.S.C. § 1185a(a)(3)(B)(i).[1]

In sum, the Court finds that Plaintiff may continue to pursue all three theories: that the challenged policy is an impermissible NQTL, QTL, and financial requirement.[2]

### iii. Comparable Practice

Second, Defendants contend that Plaintiff has failed to state a Parity Act claim because she "has not identified a covered medical or surgical practice that is comparable to the challenged reimbursement terms." Mot. at 8. Defendants point to Plaintiff's complaint, in which she alleges that Defendants "impose reimbursement penalties on claims for coverage for psychotherapy services" that "are neither equally imposed on comparable office-based medical/surgical care nor grounded in actual provider quality/expertise." *See* Compl. ¶ 5; *see also id.* ¶ 11 (alleging that if "Plaintiff sought counseling services from internists without specialized mental health training, for example, United would not have imposed this reduction"). According to Defendants, these allegations are insufficient to make out a Parity Act claim. *See* Mot. at 8. Relying on two out-of-circuit district court cases, Defendants assert that a plaintiff is required to identify a medical or surgical practice that is treated more favorably than a comparable mental health service. *See* Mot. at 8 (citing *Roy C.*, 2018 WL 4511972, at *3 ("[T]o survive the dismissal of a Parity Act claim, a plaintiff must allege a medical or surgical analogue that the plan treats differently than the disputed mental health or substance abuse services."); *Welp v. Cigna Health & Life Ins. Co.*, No. 17-80237-CIV, 2017 WL 3263138, at *6 (S.D. Fla. July 20, 2017) ("[A] plaintiff must identify the treatments in the medical/surgical arena that are analogous to the sought-after mental

---

[1] Defendants also move, in a footnote, to strike Plaintiff's allegations that United's policy is a QTL and financial requirement. *See* Mot. at 8 n.5. This request is seemingly inconsistent with Defendants' position that Plaintiff has "concede[d]" that the policy is not a QTL or financial requirement. *See* Mot. at 6–8. To the extent the Court need rule on this motion via footnote, it is denied for the same reasons as the motion to dismiss.

[2] This conclusion is buttressed by the parties' inability to explain the practical import of allowing multiple, potentially inconsistent, theories past the motion to dismiss stage and Defendants' concession at the hearing that there will be "overlap" between the theories and the discovery that would be necessary for each.

8

health/substance abuse benefit and allege that there is *a* disparity in their limitation criteria.") (emphasis in original)). Based on these cases, Defendants argue that Plaintiff's allegations are merely conclusory and do not meet the pleading standard.

But *Roy C.* and *Welp* arose in a different context and neither supports so sweeping a rule as Defendants suggest. Both cases involved Parity Act challenges to insurance plans that expressly excluded coverage for wilderness therapy treatment programs. *See Roy C.*, 2018 WL 4511972, at *1; *Welp*, 2017 WL 3263138, at *2. In *Roy C.*, the court found that the plaintiff "failed to identify any language or provisions" in the plan that created "any sort of disparity." 2018 WL 4511972, at *3. Likewise, in *Welp*, the court explained that the complaint considered "wilderness programs in isolation" and that the plaintiff's theory would lead to a Parity Act violation "whenever a plan denied coverage for *any* mental health or substance abuse treatment." 2017 WL 3263138, at *6.

By contrast, Plaintiff here has alleged that United singled out mental health services for disparate treatment by applying reimbursement reductions to mental health and substance use disorder services only. *See* Compl. ¶ 5. To be sure, Plaintiff has not identified a particular medical or surgical analogue for which United does not apply a comparable reimbursement reduction. But the Court finds that, at least at the motion to dismiss stage, such a showing is not required. First, requiring Plaintiff to identify such an analogue may require her to plead facts "peculiarly within the possession and control of" Defendants, *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (internal quotation omitted), which counsels toward allowing discovery. Second, it is not obvious that the wilderness program cases are particularly instructive, especially considering that another court to hear a similar challenge concluded that wilderness programs may "be used to treat injuries and illnesses aside from mental health or substance abuse issues," meaning a restriction would not necessarily violate the Parity Act. *See A.H. v. Microsoft Corp. Welfare Plan*, No. C17-1889-JCC, 2018 WL 2684387, at *7 (W.D. Wash. June 5, 2018). Third, and most fundamentally, it would flout the plain text of the Parity Act if an insurer could pay providers of mental health services less simply because they are providers of mental health services. Such a policy would, by its very terms, be "applicable only with respect to mental health or substance use disorder benefits," 28 U.S.C. § 1185a(a)(3)(A), and thus run afoul of the Parity

Act. *See A.F. v. Providence Health Plan*, 35 F. Supp. 3d 1298, 1315 (D. Or. 2014) (holding that the "plain text of the Federal Parity Act prohibits separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits") (internal quotation omitted). Thus, the Court concludes that Plaintiff has adequately alleged a Parity Act violation even without identifying a medical or surgical analogue.

### iv. Stringency

Third, Defendants contend that Plaintiff's Parity Act claim should be dismissed for failing to allege that United's policies are applied more stringently to mental health services than to a medical or surgical analogue. *See* Mot. at 9. Again, this argument relies on the *Welp* court's analysis of wilderness treatment programs. *See id.* But, as explained above, the Court finds that Plaintiff need not identify an analogue, at least at this stage. As other courts have recognized, the "meager" case law "comports with the notion that it is enough to plausibly plead that there is a categorical exclusion for mental health benefits but not for medical benefits." *Bushell v. UnitedHealth Grp. Inc.*, No. 17-CV-2021 (JPO), 2018 WL 1578167, at *6 (S.D.N.Y. Mar. 27, 2018). Here, Plaintiff has pled that only mental health services—and not medical or surgical services—are subject to the reimbursement reductions. *See, e.g.*, Compl. ¶ 5. Plaintiff's allegations of categorical disparate treatment are sufficient to state a claim for a Parity Act violation. *See Doe*, 2018 WL 3998022, at *5 (denying motion to dismiss where plaintiff alleged "that the reimbursement policy limits the scope of behavioral health benefits by causing plan members to pay more for those benefits when they see a psychologist or masters' level counselor"); *A.F.*, 35 F. Supp. 3d at 1315 (granting plaintiff's motion for partial summary judgment because policy exclusion that was "overtly applicable only to mental health conditions" violated plain text of Parity Act).

\*   \*   \*

The Court finds that Plaintiff has made out a Parity Act claim and thus **DENIES** the motion to dismiss this cause of action.

### B. Section 2706 Claim

Defendants moved to dismiss Plaintiff's cause of action brought under Section 2706 of the

10

Affordable Care Act, contending that the statute does not provide a private right of action. *See* Mot. at 10. The Court agrees.

Section 2706 of the ACA mandates that a "group health plan and a health insurance issuer offering group or individual health insurance coverage shall not discriminate with respect to participation under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable State law." 42 U.S.C. § 300gg-5. However, enforcement authority is vested with the Secretary of Health and Human Services. *See* 42 U.S.C. § 300gg-22(a)(2). Acknowledging this limitation, Plaintiff argues that she has a private right of action arising not directly under Section 2706, but rather through ERISA's claim for benefits, 29 U.S.C. § 1132(a)(1)(B), or equitable relief, § 1132(a)(3)(A), provisions because Section 2706 was incorporated into ERISA by 29 U.S.C. § 1185d. *See* Opp. at 13–14.

The Court rejects this attempted end-run around the statutory limitation, as have the other courts to have considered the question. *See, e.g.*, *A.Z. v. Regence Blueshield*, 333 F. Supp. 3d 1069, 1083 (W.D. Wash. 2018) (dismissing with prejudice ACA claim brought under ERISA because "Section 300gg-5 does not create a private right of action"); *Vorpahl v. Harvard Pilgrim Health Ins. Co.*, No. 17-CV-10844-DJC, 2018 WL 3518511, at *5 (D. Mass. July 20, 2018); *Grossman v. Directors Guild of Am., Inc.*, No. EDCV 16-1840-GW(SPx), 2017 WL 5665024, at *8 (C.D. Cal. Mar. 6, 2017). Plaintiff cannot avoid Section 2706's bar on private suits by invoking ERISA's claim for benefits or equitable relief provisions. Accordingly, the Court **GRANTS** the motion to dismiss Plaintiff's Section 2706 claim, without leave to amend, because allowing amendment would be futile.

### C. ERISA Claims

Plaintiff brought a claim for injunctive relief under 29 U.S.C. § 1132(a)(3)(A), Compl. ¶¶ 62–63, and a claim for appropriate equitable relief under 29 U.S.C. § 1132(a)(3)(B), Compl. ¶¶ 64–65. Defendants moves to dismiss Plaintiff's equitable claims under ERISA because "Plaintiff has not pled a predicate violation of ERISA." Mot. at 12.

Section 1132(a)(3) "does not authorize appropriate equitable relief *at large*, but only appropriate equitable relief for the purpose of redressing any violations or enforcing any

11

provisions of ERISA or an ERISA plan." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000) (internal quotations and alterations omitted). The parties agree that whether these claims should be dismissed depends on whether Plaintiff's other claims are dismissed. *See* Mot. at 12–13; Opp. at 15; Reply at 10. Because the Court finds that Plaintiff has properly pled a violation of the Parity Act (but not Section 2706), the Court **DENIES** the motion to dismiss Plaintiff's claims for equitable relief under ERISA.

### D. Motion to Proceed Under Pseudonym

Plaintiff moved, unopposed, to continue proceeding under the pseudonym Jane Smith and to seal all personally identifying information. *See* Dkt. No. 23. The Court **GRANTS** her request, subject to reconsideration if Plaintiff moves for class certification.

A court may allow a party to proceed anonymously where "necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment," including when necessary to "preserve privacy in a matter of sensitive and highly personal nature." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) (ellipsis in original, quotation marks and citation omitted). The court must balance the party's "need for anonymity" against the "prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.*

The Court finds that Plaintiff may proceed anonymously, at least at this stage in the proceedings, in order to preserve her privacy in the sensitive area of her mental health diagnosis and treatment. Moreover, given that Defendants have consented to Plaintiff proceeding anonymously, and have access to her real name and medical records, there is no prejudice to them. Finally, the Court finds that the public will not be prejudiced in not knowing Plaintiff's identity, at least in the early stages of what remains an individual action. However, this decision is subject to reconsideration in the event that Plaintiff moves for class certification. *See Doe v. NFL Enters., LLC*, No. C 17-00496 WHA, 2017 WL 697420, at *2 (N.D. Cal. Feb. 22, 2017) (finding that "class members will also have a right to know the identity of their representative in this litigation").

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion to dismiss the Section 2706

claim without leave to amend but **DENIES** the motion to dismiss the Parity Act and ERISA claims. In addition, the Court **GRANTS** the motion to proceed under a pseudonym.

The Court **SETS** a case management conference for July 30, 2019 at 2:00 p.m. in Courtroom 2, Fourth Floor, Oakland. The parties need not file an updated case management statement but instead are directed to meet and confer and to file by July 23 a proposed schedule through the class certification stage.

**IT IS SO ORDERED.**

Dated: 7/18/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge